# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WILLIAMS, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CALLON PETROLEUM COMPANY, MATTHEW R. BOB, JOSEPH C. GATTO, JR., FRANCES ALDRICH SEVILLA-SACASA, BARBARA FAULKENBERRY, ANTHONY J. NOCCHIERO, MARY SHAFER-MALICKI, STEVEN A. WEBSTER, and JAMES E. CRADDOCK, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Robert Williams ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Callon Petroleum Company ("Callon" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with APA Corporation ("APA").[1]

2. On January 3, 2024, Callon entered into an Agreement and Plan of Merger (the

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

"Merger Agreement") with APA and APA's wholly owned subsidiary Astro Comet Merger Sub Corp. The Merger Agreement provides that APA and Callon will merge, with Company stockholders receiving 1.0425 shares of APA common stock for each share of Callon common stock held.[2]

3.      The Company's corporate directors subsequently authorized the February 16, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Callon stockholders will own approximately nineteen percent of the combined company upon consummation of the Proposed Transaction.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for March 27, 2024.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and is and has been at all times relevant hereto, the owner of Callon common stock.

10. Defendant Callon is a Delaware corporation with its principal executive offices located at One Briarlake Plaza, 2000 W. Sam Houston Parkway S., Suite 2000, Houston, Texas 77042. Callon's shares trade on the New York Stock Exchange under the ticker symbol "CPE." Callon is an independent oil and natural gas company focused on the acquisition, exploration, and sustainable development of high-quality assets in the Permian Basin in West Texas. The Company's activities are primarily focused on horizontal development in the Midland and Delaware Basins, both of which are part of the larger Permian Basin in West Texas. Callon's primary operations in the Permian Basin reflect a high-return, oil-weighted drilling inventory with multiple prospective horizontal development intervals.

11. Defendant Matthew R. Bob is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Joseph C. Gatto, Jr. is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

13. Defendant Frances Aldrich Sevilla-Sacasa is and has been a director of the Company at all times relevant hereto.

14. Defendant Barbara Faulkenberry is and has been a director of the Company at all times relevant hereto.

15. Defendant Anthony J. Nocchiero is and has been a director of the Company at all times relevant hereto.

16. Defendant Mary Shafer-Malicki is and has been a director of the Company at all times relevant hereto.

17. Defendant Steven A. Webster is and has been a director of the Company at all times relevant hereto.

18. Defendant James E. Craddock is and has been a director of the Company at all times relevant hereto.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On January 4, 2024, APA and the Company jointly announced in relevant part:

HOUSTON, Jan. 4, 2024 – APA Corporation ("APA" or the "Company") (NASDAQ: APA) and Callon Petroleum Company ("Callon") (NYSE: CPE) have entered into a definitive agreement under which APA will acquire Callon

in an all-stock transaction valued at approximately $4.5 billion, inclusive of Callon's net debt. Under the terms of the transaction, each share of Callon common stock will be exchanged for a fixed ratio of 1.0425 shares of APA common stock. The transaction is expected to be accretive to all key financial metrics and add to APA's inventory of high quality, short-cycle opportunities. Callon's assets provide additional scale to APA's operations across the Permian Basin, most notably in the Delaware Basin, where Callon has nearly 120,000 acres. On a pro forma basis, total company production exceeds 500,000 BOE per day and enterprise value increases to more than $21 billion.[ ]

**Key Highlights**

- Combination of Callon's Delaware-focused footprint with APA's Midland-focused footprint provides scale and balance in the Permian Basin;
- APA's oil-prone acreage in the Midland and Delaware Basin combined will increase by more than 50% following the transaction;
- Expected to be accretive on key financial and value metrics;
- Estimated overhead, operational and cost-of-capital synergies to exceed $150 million annually; and
- Additional scale anticipated to improve credit profile; pro forma balance sheet will remain strong with leverage at 1.1x net debt / adjusted EBITDAX.[ ]

**Management Commentary**

"This transaction is aligned with APA's overall portfolio strategy and fits all the criteria of our disciplined approach to evaluating external growth opportunities. Callon has built a strong portfolio in the Permian Basin that is complementary to our existing Permian assets and rounds out our opportunity set in the Delaware," said John J. Christmann IV, APA's CEO and president. "The acquisition is accretive and unlocks value for both shareholder bases, as increased scale will enable us to realize significant overhead and cost-of-capital synergies. The pro forma footprint in the Permian will also create opportunities to capture meaningful operating synergies."

"We are very proud of the significant steps we have taken to enhance Callon's asset base, operational performance and balance sheet over the past several years," said Joe Gatto, Callon's president and CEO. "This combination with APA now provides for an enhanced value proposition for our shareholders built on their depth of experience and strong execution in the Permian Basin, flexibility for increased capital allocation, and ongoing delineation and optimization efforts. Importantly, I would like to personally thank each and every Callon employee for their role in building this company. I am very proud of this team and what we have achieved together."

**Combined Permian Asset Position and Preliminary 2024 Planned Activity**

Pro forma average daily Permian Basin production was 311 Mboe/d in 3Q 2023, which represents a 48% increase from APA's Permian Basin production on a standalone basis. APA's oil production as a percentage of BOE's in the Permian increases from approximately 37% to 43% in 3Q 2023, on a pro forma basis.

APA will provide additional activity plans and details post closing.

**Transaction Details**

In this all-stock transaction, each outstanding share of Callon common stock will be exchanged for 1.0425 shares of APA common stock, representing an implied value to each Callon share of $38.31 per share based on the closing price of APA common stock on Jan. 3, 2024. APA is expected to issue approximately 70 million shares of common stock in the transaction. After closing, existing APA shareholders are expected to own approximately 81% of the combined company and existing Callon shareholders are expected to own approximately 19% of the combined company. APA expects to retire the existing debt at Callon and replace it with APA term loan facilities totaling $2.0 billion. The term loan facilities are expected to offer improved optionality for near-term debt reduction. JPMorgan Chase Bank, N.A., Citigroup Global Markets Inc. and Wells Fargo Bank, National Association, LLC have jointly provided $2.0 billion of committed financing for the deal.

The transaction has been unanimously approved by the Boards of Directors of both APA and Callon and is expected to close during the second quarter of 2024, subject to customary closing conditions, termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and approval of the transaction by shareholders of both APA and Callon. Upon the closing of the transaction, a representative from Callon will join the APA board. APA's executive management team will lead the combined company with the headquarters remaining in Houston, Texas.

**Pro Forma APA Positioning**

"APA has a proven ability to deliver strong results from its unconventional assets in the Permian Basin, and we look forward to building on the progress that the team at Callon has made within its asset base. This transaction is aligned with our strategy of maintaining and growing a diversified portfolio, underpinned by large-scale core areas of operation while continuing to build a portfolio of medium and longer-term exploration-driven development opportunities," Christmann said.

> Following the closing, the company's worldwide pro forma production mix will be approximately 64% U.S. / 36% international.
>
> APA's global portfolio includes ongoing development on large-scale legacy assets in the U.S. and Egypt.  The company is also advancing a FEED process for a large-scale FPSO development offshore Suriname.  In addition to current production and development activities across the globe, APA maintains a differentiated exploration portfolio, which includes newly acquired large-scale blocks offshore Uruguay and onshore state-land leases in Alaska.
>
> **Advisors**
>
> Citi and Wells Fargo Securities LLC are acting as financial advisors to APA, and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to APA.  Morgan Stanley & Co. LLC is acting as lead advisor to Callon, and RBC Capital Markets, LLC is also acting as financial advisor to Callon.  Kirkland & Ellis LLP is serving as legal advisor to Callon.

**The Materially Incomplete and Misleading Proxy Statement**

21.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on February 16, 2024.  The Proxy Statement, which recommends that Callon stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections for Callon and APA; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); (c) potential conflicts of interest faced by Morgan Stanley and the Company's additional financial advisor RBC Capital Markets, LLC ("RBCCM"); and (d) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Company's and APA's Financial Forecasts*

22.     The Proxy Statement fails to disclose material information concerning the Company's financial forecasts for both Callon and APA.

23.     According to the Proxy Statement:

7

> Morgan Stanley performed a net asset value analysis on both Callon and APA based on estimates of future Callon Unlevered Free Cash Flow and APA Unlevered Free Cash Flow, respectively, from January 1, 2024, through December 31, 2074, and January 1, 2024, through December 31, 2050, respectively, under each of Case A and Case B.[4]

The Proxy Statement, however, fails to disclose Callon's unlevered free cash flows for years 2029 through 2074 under each of the "Case A" and "Case B" pricing assumptions and the unlevered free cash flows of APA for years 2029 through 2050, under each of "Case A" and "Case B." The Proxy Statement alternatively fails to disclose the growth rates used to calculate the unlevered free cash flows of each company for the specified periods.

24. As to the "Callon Management Projections for Callon" and the "Callon Management Projections for APA," the Proxy Statement fails to disclose the line items underlying Adjusted EBITDAX and Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Morgan Stanley*

25. The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Morgan Stanley.

26. As to the *Callon Discounted Cash Flow Analysis–Net Asset Value Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the Company's net debt, cash-settled awards, asset retirement obligations, and net working capital; and (b) its fully diluted outstanding shares.

27. As to the *APA Discounted Cash Flow Analysis–Net Asset Value Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) APA's net debt, net working capital, cash-settled awards of APA, and the value of equity investments of APA; and

---

[4] Proxy Statement at 82.

(b) its fully-diluted shares.

28. As to the *Equity Research Valuation* of each of Callon and APA performed by Morgan Stanley, the Proxy Statement fails to disclose each reference company's individual price target and the respective, corresponding source.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's and RBCCM's Potential Conflicts of Interest*

29. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley and RBCCM, including the fee Morgan Stanley expects to receive in connection with its engagement, as well as how much of that is contingent upon consummation of the Proposed Transaction.

30. The Proxy Statement also fails to disclose the fees Morgan Stanley and/or its affiliate received or expect to receive for serving as a lender to APA.[5]

31. The Proxy Statement fails to disclose the terms of RBCCM's engagement by the Company, including the compensation RBCCM received or expects to receive, in connection with the Proposed Transaction.

32. The Proxy Statement also fails to disclose the details of any services RBCCM has provided to the Company, APA, or their respective affiliates in the prior two years, and any related compensation received by RBCCM.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's and RBCCM's Potential Conflicts of Interest*

33. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, including a summary of the financial analyses

---

[5] *See id.* at 90 ("as of the date of Morgan Stanley's opinion, Morgan Stanley or an affiliate thereof was a lender to APA.").

presented by RBCCM at the December 27, 2023, Board meeting, as well as any additional financial analyses prepared by RBCCM and presented to the Board or Company management in connection with the Proposed Transaction.

34. The Proxy Statement further fails to disclose the terms of all indications of interest received by the Company, including, but not limited to, the specific exchange ratios included in each of the proposals submitted by the company referred to in the Proxy Statement as "Company D."

35. The omission of the above-referenced information renders statements in the "Certain Unaudited Forecasted Financial Information," "Opinion of Morgan Stanley, Callon's Financial Advisor," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

36. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Callon**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially

misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Callon is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth

herein.

46. The Individual Defendants acted as controlling persons of Callon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Callon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 13, 2024 **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*

14